IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KENNETH S.,

               Plaintiff,

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

CIVIL ACTION FILE NO.

1:18-CV-2327-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied his disability

applications.    For the reasons set forth below, the court **ORDERS** that the

Commissioner's decision be **REVERSED** and that the case be **REMANDED** for

further proceedings.

## I.    Procedural History

Plaintiff filed applications for supplemental security income and disability

insurance benefits on October 11, 2011, alleging that he became disabled on April 30,

2009.  [Record ("R.") at 148-67, 193-94, 322].  After Plaintiff's applications were

denied initially and on reconsideration, an administrative hearing was held on September 12, 2013. [R. at 29-65]. At the hearing, Plaintiff amended the alleged onset date to January 1, 2010. [R. at 33-34, 322]. The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications on November 21, 2013. [R. at 14-23]. After the Appeals Council denied Plaintiff's request for review, Plaintiff sought judicial review of the Commissioner's final decision. On August 1, 2016, the district court reversed the ALJ's decision and remanded the case to the Commissioner for further proceedings. [R. at 1-10, 381-423]. A second administrative hearing was held on February 7, 2018, and Plaintiff's attorney informed the ALJ that the alleged onset date should be amended to March 1, 2012. [R. at 340-61]. The ALJ issued a decision on March 20, 2018, again denying Plaintiff's applications. [R. at 322-33]. Plaintiff filed his complaint in this court on May 21, 2018, seeking judicial review of the Commissioner's final decision. [Doc. 1]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Facts

The ALJ found that Plaintiff has lumbar spine disorder, cervical spine disorder, and fibromyalgia, impairments that are "severe" within the meaning of the Social Security regulations. [R. at 325]. The ALJ determined that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Id.]. Although Plaintiff is unable to perform any of his past relevant work, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. at 331-32]. As a result, the ALJ concluded that Plaintiff has not been under a disability since January 1, 2010, through the date of the ALJ's decision. [R. at 332].

The decision of the ALJ [R. at 322-33] states the relevant facts of this case as modified herein as follows:

The claimant's allegations as presented in his testimony at a prior hearing are that he is a high school graduate who last worked in April 2009 and that he then received unemployment benefits until January 2010. He worked in a warehouse, lifting up to 100 pounds of meat, until his position was eliminated. He previously worked in a warehouse until laid off. He had been a supervisor in charge of transportation and the warehouse. His medical problems began in 2003, when he injured his back lifting his father. In February 2009, the claimant went to a chiropractor and received pain medication from an orthopedist. A magnetic resonance imaging ("MRI") study in 2010 revealed a bulging disc.

AO 72A
(Rev.8/82)

The claimant alleged that lower back is his main problem, with stenosis and radiating pain. The pain interferes with his mobility and his ability to bend down. He is unable to lift heavy objects. He has not visited a doctor due to his financial difficulties. His only medication is over-the-counter Aleve and aspirin.

The medical evidence of record shows that, prior to the amended alleged onset date, an MRI of the lumbar spine in January 2006 revealed a posterior broad-based disc protrusion with mild bilateral degenerative arthropathy, resultant mild bilateral neural stenosis, and mild lateral recess stenosis, with no definite nerve root impingement at L3-L4. There was posterior broad-based disc protrusion and osteophyte complex with moderate bilateral degenerative arthropathy and resultant moderate neural foraminal and lateral recess stenosis at L4-L5. (Exhibit 1F at 1). In February 2006, the claimant's back pain was noted as occasionally flaring. (Exhibit 1F at 10). The claimant was administered a pain injection for back pain and was given a note to be absent from work for two days. (Exhibit 1F at 11). In August 2008, the claimant was assessed to have plantar fasciitis. (Exhibit 1F at 3).

From March 2009 through May 2009, the claimant went to a chiropractor who provided treatments. The chiropractor wrote a note in April 2009 that the claimant would need intermittent leave from work due to low back pain which interfered with

AO 72A

(Rev.8/82)

the claimant's bending forward or bending back and prevented him from standing more than fifteen minutes at one time. (Exhibit 6F). The chiropractor wrote the note for a specific period of time related to accommodation for warehouse work.

In October 2010, after the alleged onset date, the claimant went to Dr. Scott Arrowsmith, complaining of variable low back pain with occasional radiation to the legs as far as the knee. No motor or sensory deficit was noted, and the claimant declined pain medication and muscle relaxants. (Exhibit 1F at 4). A November 2010 MRI of the lumbar spine revealed a minimal circumferential disc bulge with mild foraminal narrowing at L3-L4, a circumferential disc bulge with mild neural foraminal stenosis at L4-L5, and a circumferential disc bulge at L5-S1 with mild spinal stenosis. (Exhibit 1F at 2). Dr. Arrowsmith prescribed a Medrol Dosepak and Naprosyn for pain and Parafon for spasms. (Exhibit 1F at 5). In October 2011, Dr. Arrowsmith noted that the claimant experienced chronic back pain with spasms between half a day and three days each week. The claimant could vacuum only briefly and needed to use a riding lawnmower rather than a push mower. (Exhibit 1F at 8).

On March 28, 2012, Dr. Darrell Murray performed a physical consultative examination of the claimant. The claimant complained of back spasms with vertebral deterioration and arthritis. The pain began two months after a 2003 motor vehicle

5

accident. The claimant reported that he had a history of back pain with a flare in 2005, received pain medication and muscle relaxants in 2006, went to two chiropractors, received physical therapy in 2009, and again received pain medication and muscle relaxants from Dr. Arrowsmith in 2010. The claimant had arthritis in his hand, and he had past arthroscopic surgery of his knees and shoulder. The claimant identified his medication as only over-the-counter medication. The claimant told Dr. Murray that he could perform his personal care, walk more than one hundred feet, shop for groceries, clean his home, prepare his own food, launder clothes, make his bed, and lift twenty pounds. He also drove to the medical offices. (Exhibit 2F).

Dr. Murray found the claimant's weight to be 250 pounds at six feet one inch tall. The claimant had no shortness of breath during the exam, and he arose from his chair with mild difficulty. His gait was normal with no ataxia; his motor strength was full; and his sensation was intact. He had positive straight leg raising test at 30 degrees actively and 45 degrees passively, and the range of motion of his back was slightly limited. Dr. Murray ascertained lumbar paravertebral muscle spasm with tenderness but not in the cervical spine. The claimant's arms and legs were not tender, and fine and gross manipulation were normal. He could walk on his heels and toes, stoop, pick

up objects from the floor with both hands, and squat halfway. However, he had mild difficulty rising. He used no assistive device.

Dr. Murray found the claimant's impairments to be degenerative disc disease of the lumbar spine and osteoarthritis. Dr. Murray opined that the claimant could sit six to eight hours with frequent position changes and walk four to six hours with frequent rest periods over the course of an eight-hour day. The claimant could occasionally bend, kneel, crawl, stoop, and crouch with mild limitation from back pain. Reaching, handling, feeling, grasping, pushing, pulling, and lifting would be without limitation. Previous radiologic imaging reflected minor disc space narrowing and disc desiccation at L3-L4 and L4-L5. (Exhibit 2F).

Dr. Murray performed another physical consultative examination of the claimant in 2015. The physician concluded that the claimant had lumbar degenerative disc disease, history of L3-L5 herniated disc, osteoarthritis, and depressive disorder. His opinion of the claimant's capacity was the same as in 2010. (Exhibit 7F).

The claimant worked briefly in 2014, but this work activity did not rise to the level of substantial gainful activity. The claimant's former supervisor wrote:

> I am no longer with Xpedient Logistics so I do not have access to [the claimant's] records for exact dates, however, they were approximately January 2014 to March 2014. [The claimant] worked 4-5 hours a day

AO 72A

(Rev.8/82)

shuttling trailers on the yard using a motorized yard tractor. Because of the nature of the business, he was able to work at his own pace putting full trailers up to the dock and pulling empty trailers off the dock and parking them on the lot. I believe his official title was "Yard Jockey." Since his duties were essentially driving and he was able to work at his own pace, I did not have to make any accommodations.

(Exhibit 21E).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.    Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See 42 U.S.C. §§ 423(d)(2) and (3).

AO 72A
(Rev.8/82)

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. at 1440. "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he has not engaged in substantial gainful activity. See id. The claimant must establish at step two that he is suffering from a severe

9

impairment or combination of impairments.  See id.  At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920.  If the claimant is able to make this showing, he will be considered disabled without consideration of age, education, and work experience.  See id.  "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work."  Doughty, 245 F.3d at 1278.  "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work."  Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.  Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2015.

AO 72A

(Rev.8/82)

2.    The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. (20 C.F.R. §§ 404.1571, *et seq.*, and 416.971, *et seq.*).

3.    The claimant has the following severe impairments: lumbar spine disorder; cervical spine disorder; and fibromyalgia. (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.    The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a).

6.    The claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

7.    The claimant was born on September 22, 1954, and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching retirement age. (20 C.F.R. §§ 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. §§ 404.1564 and 416.964).

9.    The claimant has acquired work skills from past relevant work. (20 C.F.R. §§ 404.1568 and 416.968).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (20 C.F.R. §§ 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).

AO 72A

(Rev.8/82)

11.     The claimant has not been under a disability, as defined in the Social Security
        Act, from January 1, 2010, through the date of the ALJ's decision.  (20 C.F.R.
        §§ 404.1520(g) and 416.920(g)).

[R. at 325-32].

## V.     Discussion

Plaintiff argues that the ALJ failed to properly account for the amended onset date of disability.  [Doc. 10 at 9-11].  Plaintiff contends that the vocational expert ("VE") testified at the administrative hearing that the transferability of job skills was dependent on the claimant's age and that Plaintiff's skills were not transferable on the alleged disability onset date.  [Id.].  According to Plaintiff, although the ALJ cited to the VE's testimony regarding the transferability of skills in support of her decision, the ALJ did not adopt the VE's testimony.  [Id.].  Plaintiff also argues that the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") was erroneous.  [Id. at 12-15].  Plaintiff contends that, although the ALJ granted an opinion from a medical source great weight, the ALJ did not include in the RFC assessment some of the limitations found by the medical source in the opinion.  Moreover, the ALJ offered no explanation for doing so.  [Id.].  The court agrees with Plaintiff and will first address his arguments regarding the ALJ's RFC assessment.

AO 72A

(Rev.8/82)

Social Security Ruling 96-8p provides, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." When an ALJ assigns great weight to a medical opinion, she is required to either adopt the limitations contained in the opinion or explain why she is discounting the limitations. In <u>Watkins v. Comm'r of Social Security</u>, 457 Fed. Appx. 868, 871 (11th Cir. 2012), the ALJ stated that he gave great weight to the opinion of one of the claimant's treating physicians. The physician had opined that the claimant could work five or six hours in an eight hour workday if she had a sit/stand option. <u>Id.</u> However, the ALJ neither incorporated the treating physician's sit/stand limitation into the RFC assessment nor did he offer a reason for discounting the limitation. <u>Id.</u> The court found that the ALJ's actions constituted reversible error and wrote: "Without a clear explanation of the ALJ's treatment of [the physician's] sit/stand limitation, we cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence." <u>Id.</u> In the present case, the ALJ committed a similar error.

Dr. Darrell Murray performed a physical consultative examination of Plaintiff on March 28, 2012. [R. at 286-93]. As the ALJ noted, Dr. Murray concluded that

Plaintiff was able to: sit for six to eight hours with frequent position changes; walk for four to six hours with frequent rest periods over the course of an eight-hour day; and occasionally bend, kneel, crawl, stoop, and crouch with mild limitation secondary to back pain. [R. at 289, 328]. The ALJ gave Dr. Murray's opinions great weight. [R. at 329]. However, the ALJ did not include in the RFC assessment Dr. Murray's finding that Plaintiff required frequent position changes when sitting for six to eight hours or that he required frequent rest periods when walking for four to six hours during an eight-hour workday. [R. at 289, 326]. Instead, the ALJ simply found that Plaintiff's RFC allows him to perform sedentary work.[1] [R. at 326]. The ALJ offered no explanation for apparently discounting some of the limitations found by Dr. Murray despite giving his opinion great weight. The ALJ failed to apply the proper legal standards in evaluating Dr. Murray's opinion and assessing Plaintiff's RFC. As a result, the court "cannot determine whether the ALJ's ultimate decision on the merits was rational and supported by substantial evidence." Watkins, 457 Fed. Appx. at 871.

The court finds that the ALJ also committed reversible error when she considered Plaintiff's alleged disability onset date and the transferability of Plaintiff's

[1]"[S]edentary work generally requires being able to sit for approximately six hours total in an eight-hour workday[.]" Siverio v. Comm'r of Social Security, 461 Fed. Appx. 869, 872 (11th Cir. 2012).

14

job skills. "Transferable skills" are those "that can be used in other jobs, when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1). Transferability of job skills also depends on whether the claimant is of advanced age (age 55 or older) and limited to sedentary work. 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

At the administrative hearing on February 7, 2018, the ALJ stated in her opening statement that Plaintiff's date of birth was September 22, 1954, and that he was 54 years and seven months on the alleged onset date. [R. at 342]. This statement was incorrect. Plaintiff was over 55 years old on the alleged onset date because, as the ALJ noted in her decision, at a prior hearing, Plaintiff amended the alleged onset date to January 1, 2010. [R. at 33-34, 322]. During the February 2018 hearing, Plaintiff's attorney stated that the alleged onset date was amended to March 1, 2012. [R. at 343]. Using this date, Plaintiff's age at the latest amended alleged onset date would have been 57 years old (and approaching 58 years old). Later in the hearing, the VE was asked and testified to the following:

15

> Q.   I want to ask you about the past work of warehouse manager,
>       which you've described as SVP [Specific Vocational Preparation]
>       level 8, with a light residual of – with light demands.  Can that job
>       be done if the individual has the option to sit or stand at will?
>
> A.   No.
>
> Q.   Okay.  And this is an SVP 8 job.  Are there skills transferrable to
>       that job to work that would allow for a sit/stand at will option?
>
> A.   With the amended onset date, no.

[R. at 348].  It is clear that the VE was referring to the latest alleged onset date of

March 1, 2012.  [R. at 343, 348].  The ALJ then instructed the VE to "just answer the

question without considering the age," and the VE stated, "Well, the transferability

changes from age 54 to 58."  [Id.].  The VE's response indicates that he understood

Plaintiff's age to be 54 on the alleged onset date.  As noted *supra*, this was incorrect,

but it was what the ALJ had asserted earlier in the hearing.  The ALJ then asked the

VE, "Regardless of the age, are there transferrable skills?"  [Id.].  The VE responded,

"Yes.  There are transferrable skills."  [Id.].  The VE testified that, if age were not

considered, then the following sedentary, semi-skilled occupations could be performed

with the transferable skills acquired in Plaintiff's past relevant work: sorter; industrial

order clerk; and procurement clerk.  [R. at 349-50].

The VE later offered additional clarification about how the transferability of job

skills was affected by a claimant's age.  [R. at 356].  The VE testified: "[T]he

16

expectation for these jobs is the person is able to learn them in less than 30 days. This goes back to . . . the Code of Federal Regulations of Social Security." [Id.]. The VE explained that transferability of skills was different depending on whether the claimant was in the age range of 50 to 55 years old or 55 to 60 years old. [Id.]. The VE was then asked and testified to the following:

> Q. And that's because, and I forget the phrasing of it, but it has to do with –
> A. With age and adjustment and ability to learn.
> Q. That's the – the adjustment to the job. . . . So, that does change . . . with age.
> A. Right. So that's why I mentioned earlier, in my opinion at the lower age limit, these are appropriate. If we go to the upper ones, then they would not.

[R. at 356-57]. Thus, the VE testified that Plaintiff's skills were transferable if he was under age 55 at the alleged onset date but that his skills were not transferable if he was age 55 or older. The ALJ then offered her understanding that a claimant with limited computer skills would be able to make a vocational adjustment "in the amount of time required" if he was under age 55, but if he was age 55 or older, "there would be too much . . . adjustment." [R. at 357]. The VE stated, "Correct, Your Honor." [Id.].

The relevant Social Security regulations are consistent with the VE's testimony that, for claimants who are limited to sedentary work, the transferability of skills is

dependent on age. Twenty C.F.R. §§ 404.1568(d)(4) and 416.968(d)(4) provide, "If you are of advanced age [age 55 or older] and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." Likewise, 20 C.F.R. Part 404, Subpart P, Appendix 2 § 201.00(f) states, "In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." The ALJ in the present case found that Plaintiff was limited to no more than sedentary work. [R. at 326]. Therefore, whether Plaintiff has job skills that are transferable to skilled or semi-skilled work would depend in large measure on his age.

The evidence establishes that Plaintiff was of advanced age, that is, age 55 or older. [R. at 322]. The ALJ pointed out that, although Plaintiff originally alleged disability on April 30, 2009, at which time he was age 54, he amended the alleged onset date to January 1, 2010, at which time he was age 55. [R. at 322]. As previously noted, Plaintiff's attorney also informed the ALJ at the hearing that Plaintiff was again

18

amending the alleged onset date to March 1, 2012. [R. at 343]. The ALJ wrote in her decision that she was using January 1, 2010, as the alleged onset date because no confirmation in writing was ever received from Plaintiff's attorney. [R. at 322]. The ALJ's decision regarding the alleged onset date was erroneous. Social Security Ruling 83-20 states, "A change in the alleged onset date may be provided in a Form SSA-5002 (Report of Contact), a letter, another document, or the claimant's testimony at a hearing." Plaintiff's representative, in the presence of Plaintiff, informed the ALJ at the hearing that the amended onset date was March 1, 2012. [R. at 343]. Furthermore, Plaintiff's representative sent the ALJ a pre-hearing brief and wrote in bold font that Plaintiff "now moves to amend his alleged onset date to March 1, 2012." [R. at 563].

The court finds that the record evidence establishes that Plaintiff satisfied the requirements necessary to change the alleged onset date. If the alleged onset date had been March 1, 2012, then Plaintiff's age at that time would have been 57 years old. But regardless of whether the January 2010 date or the March 2012 date was used, Plaintiff was of advanced age, age 55 or older. Moreover, as discussed *supra*, the VE testified that Plaintiff's skills were not transferable to sedentary skilled or semi-skilled work if he was age 55 or older on the alleged onset date because there would be too much vocational adjustment required. [R. at 348, 356-57].

AO 72A

(Rev.8/82)

The ALJ, however, wrote, "[E]ven with the sedentary level of exertion and further limitation of an option to sit or stand, the vocational expert indicated that the claimant possessed transferable skills to sedentary occupations." [R. at 330, 348, 356-57]. The ALJ also wrote that the VE found that an individual with the same age, education, past relevant work experience, RFC, and work skills as Plaintiff could perform sedentary, semi-skilled occupations such as sorter, industrial order clerk, and procurement clerk. [R. at 332]. The ALJ then concluded:

> Based on the testimony of the vocational expert, the undersigned concludes that the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. The vocational expert testified the claimant's previous work is so similar to the jobs recited above that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry.

[R. at 332]. The ALJ did not accurately represent the VE's testimony. As previously noted, the VE's testimony was that because Plaintiff was age 55 or older, his skills were not transferable to sedentary skilled or semi-skilled work. [R. at 348, 356-57].

The ALJ also cited to Rule 201.07 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, commonly referred to as "the grids," in support of her finding that Plaintiff was not disabled based on his transferable work

20

skills. [R. at 332]. This also amounted to error. If Plaintiff's skills were not transferable, as the VE testified, then Rule 201.06 of the grids directs a finding of "disabled" for an individual of advanced age with previous skilled or semi-skilled work experience. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 201.06.

Even assuming that Plaintiff's skills were transferable, the ALJ's decision is not supported by substantial evidence. As discussed *supra*, the VE testified that if age were not considered, then occupations such as sorter, industrial order clerk, and procurement clerk could be performed with the transferable skills acquired in Plaintiff's past relevant work. [R. at 349-50]. The ALJ cited to the VE's testimony when she found that Plaintiff could perform these jobs which exist in significant numbers in the national economy. [R. at 331-32]. However, the VE also testified that the jobs of industrial order clerk and procurement clerk require "a decent amount of computer work" and that they could not be done without computer experience. [R. at 352-53].

During the administrative hearing, the ALJ questioned Plaintiff about his computer experience. [R. at 353-55]. Plaintiff testified that he could turn the computer on and off, perform Google searches, and use Facebook but that he could not type without looking at the keyboard and that he did not know that there was a computer

21

program called Microsoft Word. [Id.]. The ALJ then asked the VE whether the industrial order clerk and procurement clerk jobs require computer skills greater than those possessed by Plaintiff. [R. at 354]. The VE testified that these jobs require computer skills "slightly above" Plaintiff's skill level and that, as a result, those jobs would be eliminated. [Id.]. But the ALJ wrote in her decision that the VE found that an individual with Plaintiff's age, education, past relevant work experience, RFC, and work skills could perform the jobs of industrial order clerk and procurement clerk. [R. at 332]. The ALJ stated that she relied upon the testimony of the VE, but, in reality, the ALJ implicitly rejected the VE's testimony and offered no reasons for doing so. Given these facts, the court finds that the ALJ failed "to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed[.]" Martin, 894 F.2d at 1529.

"Pursuant to Title 42, United States Code, Section 405(g) the Court is empowered to reverse the decision of the Commissioner with or without remanding the cause for a rehearing." Holmes v. Comm'r of Social Security, 2017 WL 461604, at *2 (M.D. Fla. February 3, 2017) (citing Shalala v. Schaefer, 113 S. Ct. 2625, 2629 (1993)). "Generally, a reversal with remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards." Davis v. Shalala, 985 F.2d 528,

22

534 (11th Cir. 1993) (citing <u>Walker v. Bowen</u>, 826 F.2d 996, 1001-02 (11th Cir. 1987)).

However, a court may reverse the decision of the Commissioner and remand solely for entry of an order awarding disability benefits "where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." <u>Davis</u>, 985 F.2d at 534 (citing <u>Bowen v. Heckler</u>, 748 F.2d 629, 631, 635-36 (11th Cir. 1984)). "A claimant may also be entitled to an immediate award of benefits when the claimant has suffered an injustice, . . . or when the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability[.]" <u>Holmes</u>, 2017 WL 461604, at *2 (internal citations omitted).

In the present case, Plaintiff requests a remand solely for the purpose of calculating benefits. The court, however, does not find that the record evidence clearly "establishes disability without any doubt." <u>Davis</u>, 985 F.2d at 534. Much of the testimony at the administrative hearing was confusing, and Plaintiff's RFC is unclear. Moreover, the Eleventh Circuit has stressed that "it would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases." <u>McDaniel v. Bowen</u>, 800 F.2d 1026, 1032 (11th Cir. 1986). The record also does not establish that Plaintiff is entitled to an immediate award of

AO 72A

(Rev.8/82)

benefits based upon equitable considerations. As Plaintiff correctly notes, "[T]he Commissioner does not receive 'endless opportunities to get it right.'" <u>Goodrich v. Comm'r of Social Security</u>, 2012 WL 750291, at *14 (M.D. Fla. February 7, 2012) (quoting <u>Seavey v. Barnhart</u>, 276 F.3d 1, 13 (1st Cir. 2001)), <u>adopted by</u> 2012 WL 760874 (M.D. Fla. March 8, 2012). But the present case has not involved extraordinary delays resulting from repeated remands and numerous hearings. Only one remand was issued from the district court and there have been only two administrative hearings. [R. at 1-10, 29-45, 340-61, 381-423]. In light of these facts, the court finds that remand to the Commissioner for further administrative proceedings is appropriate.

## VI.    Conclusion

Based on the forgoing reasons and cited authority, the undersigned concludes that the decision of the ALJ was not supported by substantial evidence and was the result of a failure to apply the proper legal standards. It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the above discussion. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

AO 72A
(Rev.8/82)

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees. Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant. Plaintiff shall file any reply within ten days of service of Defendant's response.

**SO ORDERED**, this 19th day of August, 2019.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A

(Rev.8/82)